IN THE UNITED STATES BANKRUPTCY COURT FOR THE
WESTERN DISTRICT OF MISSOURI

| | |
|---|---|
| IN RE: ) | |
| ) | |
| DANIEL M. McGUIRE and ) | Case No. 06-60054 |
| PRISCILLA F. McGUIRE, ) | |
| ) | |
| Debtors. ) | |

## MEMORANDUM OPINION

The Chapter 13 Trustee filed a Motion to Deny Confirmation of the Debtors' Chapter 13 Plan, asserting that the Plan could not be confirmed because the Debtors propose a repayment period of less than sixty months and because the Debtors claim a deduction from their monthly income for a vehicle they own free and clear of liens, both in violation of 11 U.S.C. § 1325(b). Subsequently, the Trustee filed a Supplemental Objection to Confirmation of Debtors' Chapter 13 Plan, offering additional argument in support of the issue regarding the deduction for the vehicle. This is a core proceeding under 28 U.S.C. § 157(b)(2)(L) over which the Court has jurisdiction pursuant to 28 U.S.C. § 1334(b), 157(a), and 157(b)(1). The following constitutes my Findings of Fact and Conclusions of Law in accordance with Rule 52 of the Federal Rules of Civil Procedure as made applicable to this proceeding by Rule 7052 of the Federal Rules of Bankruptcy Procedure.

**FACTUAL BACKGROUND**

Daniel and Priscilla McGuire filed their voluntary Chapter 13 Petition on February 8, 2006. Accordingly, their case is governed by the Bankruptcy Abuse Prevention and

Consumer Protection Act of 2005 (BAPCPA).[1] According to their Schedule I, Mrs. McGuire has $1,080.95 in net monthly income from her employment. Mr. McGuire receives net pension benefits of $2,176 plus social security benefits of $588, for a combined total net monthly income of $3,844.95. The McGuires' Schedule J shows total monthly expenses of $2,592.58. Thus, Schedules I and J reveal that the McGuires have monthly disposable income of $1,292.37.

According to the McGuires' Form B22C,[2] in contrast, they have a combined gross monthly income of $3,968.15, which is based on their average gross monthly income for the six calendar months prior to the filing of the bankruptcy case, excluding Mr. McGuire's social security benefits.[3] Form B22C shows total monthly expenses of $3,790.05, leaving monthly disposable income of $178.10.

As discussed more fully below, the disposable income numbers differ between the Schedules and Form B22C because the former use actual figures, whereas the latter calculates income on a historical average and calculates expenses based largely on the national and local standards established by the Internal Revenue Service.

The McGuires' Plan proposes plan payments of $600 per month. After payment of

---

[1] S. 256, Pub.L. 109-8, 119 Stat. 23 (2005), applicable to cases filed after October 17, 2005.

[2] Official Form B22C is required by Interim Federal Rule of Bankruptcy Procedure 1007(b)(6), adopted in this District pursuant to the *General Order Adopting Interim Bankruptcy Rules*, dated October 11, 2005, available at www.mow.uscourts.gov.

[3] 11 U.S.C. §§ 1325(b)(2) and 101(10A).

attorney fees and an IRS secured tax claim of $9,171.19, the Debtors propose to pay a "pot" in the amount of $10,686 to nonpriority unsecured creditors. The "pot" amount is based on Form B22C's monthly disposable income of $178.10, multiplied by sixty months. However, at $600 per month, the McGuires will have paid in the "pot" amount in significantly less than sixty months. Thus, it appears, the McGuires hope to complete their Chapter 13 case early by paying in a higher monthly payment amount than is calculated as their disposable income on Form B22C.

As mentioned above, the Trustee objects to the Plan on two grounds: first, he asserts the McGuires cannot propose a Plan that runs a period of less than sixty months and thereby leave the case early; and, second, they have improperly claimed an ownership expense deduction on the Form B22C for a vehicle that is free of liens and, therefore, they are not committing all of their disposable income to the Plan.

## DISCUSSION

Section 1325(b)(1)(B) provides that, if the trustee or the holder of an allowed unsecured claim objects to confirmation of a plan, then the court may not approve the plan unless, as of the effective date of the plan, "the plan provides that all of the debtor's projected disposable income to be received in the applicable commitment period beginning on the date that the first payment is due under the plan will be applied to make payments to unsecured creditors under the plan."[4] Both of the Trustee's objections turn on the interpretation and

---

[4] 11 U.S.C. § 1325(b)(1)(B).

application of the phrase "projected disposable income to be received in the applicable commitment period."

*Calculation of Projected Disposable Income*

An initial step in the plan proposal and confirmation process is the determination of whether the debtor's current income (which is calculated by averaging the debtor's actual income for the previous six months and multiplying that number by twelve to arrive at an annualized number) falls above or below the median income in the area where the debtor resides. The median income in Missouri for a family of two is $44,631.00, and the McGuires have annualized current income of $47,617.80. Consequently, the McGuires appropriately checked the boxes on their Form B22C showing that they are above-median.

This determination is important in the plan confirmation process for at least two reasons: first, it determines how the debtor's "disposable income" is calculated and, second, it determines the length of the "applicable commitment period" under § 1325(b)(1)(B).

For below-median debtors, the term "disposable income" is defined by § 1325(b)(2) to mean "current monthly income received by the debtor . . . less amounts reasonably necessary to be expended" for the maintenance or support of the debtor or a dependent of the debtor, for a domestic support obligation, for certain charitable contributions and, if applicable, for expenditures necessary for the operation of the debtor's business.[5] "Current monthly income" is the average monthly income of the debtor, excluding certain items such

---

[5] 11 U.S.C. § 1325(b)(2).

4

as social security benefits, for the six months prior to the filing of the case.[6] Thus, for below-median debtors, the income side of the equation is now calculated as a historical average rather than being based on actual numbers, but the determination of what constitutes reasonably necessary expenses for purposes of determining "projected disposable income" to be paid into the plan is the same post-BAPCPA as it was pre-BAPCPA: it is based on the actual expenses identified in Schedule J and is subject to the court's discretion as to the reasonableness of the claimed expenses.

For above-median debtors such as the McGuires, on the other hand, "disposable income" now means "current monthly income" (the historical average calculation), less amounts reasonably necessary to be expended as determined in accordance with § 707(b)(2)(A) and (B).[7] This calculation is performed in Parts IV and VI on Form B22C.

Section 707(b)(2)(A)(ii)(I) provides, in part:

The debtor's monthly expenses shall be the debtor's applicable monthly expense amounts specified under the National Standards and Local Standards, and the debtor's actual monthly expenses for the categories specified as Other Necessary Expenses issued by the Internal Revenue Service for the area in which the debtor resides, as in effect on the date of the order for relief, for the debtor, the dependents of the debtor, and the spouse of the debtor in a joint case, if the spouse is not otherwise a dependent. Such expenses shall include reasonably necessary health insurance, disability insurance, and health savings account expenses for the debtor, the spouse of the debtor, or the dependents of the debtor. Notwithstanding any other provision of this clause, the monthly expenses of the debtor shall not include any payments for debts.[8]

---

[6] 11 U.S.C. § 101(10A).

[7] 11 U.S.C. § 1325(b)(2) and (3).

[8] 11 U.S.C. § 707(b)(2)(A)(ii)(I).

5

The statute also permits a debtor to deduct expenses for certain other enumerated items, such as expenses for the care of elderly or disabled family members, childrens' tuition up to $1,500, and Chapter 13 administrative expenses,[9] none of which are relevant here. The Code also permits monthly expense deductions for payments on secured debt and priority claims, averaged over sixty months.

In other words, for above-median debtors, the statute breaks down allowable expenses into five general categories: (1) those that fit into the IRS' National Standards, which include food, clothing, household supplies, personal care, and miscellaneous expenses; (2) those that fit into the IRS' Local Standards, which include housing and transportation; (3) actual expenses for items categorized by the IRS as "Other Necessary Expenses," including such items as taxes, mandatory payroll deductions, health care, and telecommunication services; (4) actual expenses, with limitations, for certain other expenses specified by the Bankruptcy Code, such as care for disabled family members and tuition; and (5) payments on secured and priority debts. Because § 707(b)(2)(A)(ii)(I) provides that monthly expenses pursuant to the IRS Standards "shall not include any payments for debts," and debtors are permitted to deduct actual mortgage and car payment amounts separately, debtors must deduct from the IRS Standard expenses their monthly mortgage and car payments to avoid double-dipping.[10]

---

[9] 11 U.S.C. § 707(b)(2)(A)(ii)(II)-(V).

[10] *See* Form B22C, Lines 25B, 28, and 29. *Accord In re Hardacre*, 338 B.R. 718, 726 (Bankr. N.D. Tex. 2006).

Here, the Trustee objects to the McGuires' claimed expenses for transportation. The IRS Local Standards apply to transportation costs, which are divided into two components: ownership costs and operating costs. The McGuires' schedules show that they own a 1996 Buick free and clear of liens. On their Form B22C, they claim a $251 deduction for the operation of one vehicle, in accordance with the IRS Local Standards. They also claim a $475 ownership expense for one vehicle pursuant to IRS Local Standards. The Trustee has no dispute with the claimed operating costs,[11] but asserts that the McGuires have improperly claimed the ownership expense for a vehicle they own free and clear of liens. Therefore, he asserts, they are not committing all of their disposable income to the Plan in violation of § 1325(b)(1)(B).[12]

Thus, the issue is whether a debtor who does not own or lease a vehicle, or owns a vehicle free of liens, is permitted to claim a vehicle ownership expense under the IRS Standards, as incorporated into the Bankruptcy Code.

According to IRS publications regarding the application of its standards, from which

---

[11] In fact, the Trustee says that because the McGuires' car is more than six years old or has reported mileage of 75,000 or more, they are allowed an additional operating expense allowance of $200. *See* Internal Revenue Manual § 5.8.5.5.2.

[12] This issue, regarding claiming vehicle ownership expenses when the debtor owns a vehicle free of liens, or does not own or lease a vehicle at all, has been raised in a number of cases currently pending in this District. Some of the arguments addressed in this Memorandum Opinion were not specifically raised by the parties in this particular case, but have been argued in other such cases. *See, e.g.,* Briefs for Debtor John Robert Parsons and the United States Trustee, *In re John Robert Parsons*, No. 06-40176 (Bankr. W.D. Mo.).

the court in *In re Hardacre*[13] found guidance, the ownership expense only applies to debtors who actually are obligated to pay a monthly loan or lease payment associated with a vehicle.[14] For example, the IRS' Financial Analysis Handbook expressly instructs that "*[i]f a taxpayer has a car payment*, the allowable ownership cost added to the allowable operating cost equals the allowable transportation expense," but, "[i]f a taxpayer has no car payment, only the operating cost portion of the transportation standard is used to figure the allowable transportation expense."[15] Similarly, the IRS' Internal Revenue Manual provides that the ownership expense is allowed only for the "purchase and/or lease of a vehicle."[16] These guidelines mandate that a taxpayer cannot claim an IRS ownership expense for a vehicle they own free and clear. The court in *Hardacre* held the same was true for debtors in bankruptcy.[17]

---

[13] 338 B.R. at 726.

[14] Internal Revenue Manual, Financial Analysis Handbook § 5.15.1.7(4)(b); *see also* Internal Revenue Manual, Future Income § 5.8.5.5.2.

[15] Internal Revenue Manual, Financial Analysis Handbook § 5.15.1.7(4)(b) (emphasis added). I note that the legislative history of BAPCPA specifically refers to the IRS Financial Analysis Handbook as the basis for determining expenses under § 707(b). *See* H.R. Rep. 109-31(I), at 13-14 (2005), *reprinted in* 2005 U.S.C.C.A.N. 88, 99-100.

[16] Internal Revenue Manual, Future Income § 5.8.5.5.2. Moreover, even when the ownership expense is applicable because the taxpayer actually has a car or lease payment, the IRS uses its Standards as a cap, not an absolute number: the Internal Revenue Manual provides that, when considering allowances for housing and transportation, the taxpayer is allowed the amount provided by the Local Standards, or "the amount actually spent." *Id*.

[17] *Hardacre*, 338 B.R. at 627. The court also held that debtors cannot "double dip" by claiming the IRS Standard in addition to the deduction for actual mortgage and car payments. *Id.* at 626.

Debtors argue that since § 707(b)(2)(A)(ii) provides that "the debtor's monthly expenses *shall be* the debtor's applicable monthly amounts *specified under*" the IRS Standards, they are entitled to claim such amounts, whether they actually have any such ownership expense, or not.[18]

I disagree. As the Chapter 13 Trustee points out, the statute provides that a "debtor's monthly expenses shall be the debtor's *applicable* monthly expense amounts" under the Standards. If a debtor does not own or lease a vehicle, the ownership expense is not "applicable" to that debtor. Thus, if a debtor is not incurring expenses for the purchase or lease of a vehicle, the debtor cannot claim a vehicle ownership expense under the IRS Standards. This conforms with the IRS's application of the Standards.

However, if the expense *is* applicable (because the debtor is actually incurring expenses for the purchase or lease of a vehicle), then because the monthly ownership amount "shall be" the "amount specified" in the Standards, § 707(b)(2)(A)(ii)(I) mandates that the debtor is permitted to claim an expense deduction for the full Standard amount on Form B22C (less the actual payment amount which is deducted later on Form B22C – *i.e.,* no double-dipping).

Thus, because the McGuires do not currently have a vehicle ownership expense, they cannot claim it on their Form B22C. If they did have such an expense, they could claim the full Standard amount, less the actual payment amount. Instead, consistent with IRS Local

---

[18] *See* Eugene R. Wedoff, *Means Testing in the New 707(b)*, 79 Am. Bankr. L.J. 231, 256-58 (2005).

Standards, they are entitled to claim on Form B22C an additional operating expense of $200, which expense is allowed for debtors with cars more than six years old, or having more than 75,000 miles.[19]

The McGuires also argue that, if they are not allowed to deduct a vehicle ownership expense, they are being penalized because it is likely that, at some point during their payment period, they will need to replace their 1996 Buick, at which point they will in fact have an ownership expense, *i.e.*, a car payment. Therefore, they argue, the amount they will be required to pay to the Trustee, as disposable income, is too high because it does not take such future car payments into account. The problem with this argument is that it presumes that a debtor's projected disposable income is fixed at the outset of the case, and that that number is not modifiable based on changes in the debtor's actual circumstances.

The term "projected disposable income" was part of the Bankruptcy Code prior to BAPCPA. In *Rowley v. Yarnell*,[20] the Chapter 12 debtors did not, at the time their plan was proposed, anticipate having any disposable income available during the term of the plan. Therefore, they argued, they need not pay anything to unsecured creditors, even if it turned out that they did have excess funds available. The Eighth Circuit rejected that argument, holding that the term "projected" disposable income "imposes a duty upon the [debtors] to pay their actual net disposable income received during the plan period to the unsecured

---

[19] *See* Internal Revenue Manual, Future Income § 5.8.5.5.2.

[20] 22 F.3d 190 (8th Cir.1994).

creditors."[21] Thus, according to the Eighth Circuit, a debtor's projected disposable income changes from year to year, based on actual income and expenses. The BAPCPA amendments do not appear to change that holding. Therefore, if at some point the McGuires do need to purchase a vehicle, they will be able to adjust their disposable income, and plan payment, accordingly.[22]

*The Applicable Commitment Period*

BAPCPA modified 1325(b) to require debtors to pay in all projected disposable income received during the "applicable commitment period." The term "applicable commitment period" ("ACP") is defined in § 1325(b)(4), which provides that, if a debtor's income (which is calculated by averaging the debtor's actual income for the previous six months and multiplying that number by twelve to arrive at an annualized number) is below the median income for the relevant family size in the applicable state, the debtor's ACP is three years.[23] If the debtor's income is above the applicable median income, then the

---

[21] 22 F.3d at 193. *But see In re Anderson*, 21 F.3d 355 (9th Cir. 1994) (contra).

[22] *Accord In re Jass,* 340 B.R. 411 (Bankr. D. Utah 2006) (holding that Form B22C is a starting point in determining disposable income, which any party can rebut with evidence of actual numbers, including Schedules I and J); *In re Renicker*, 2006 WL 1331487 (Bankr. W.D. Mo. May 11, 2006) (Venters, J.) (holding the same with regard to expenses). I also note that the BAPCPA revisions require, at the request of the court, United States Trustee, or any party in interest, individual debtors to file with the court statements of income end expenditures annually after the plan is confirmed and until the case is closed, as well as their annual income tax returns while their case is pending. 11 U.S.C. § 521(f). If debtors are not permitted (or in some cases, required) to change their plan payments due to changes in actual income and expenses, § 521(f) would serve no purpose.

[23] 11 U.S.C. § 1325(b)(4)(A)(i).

debtor's ACP is five years.[24]

Because the McGuires are above-median, they checked the box on their Form B22C showing that the ACP is five years.[25] Nevertheless, the McGuires' Plan proposes a payment amount that will pay their attorney fees and secured tax claim in full and their unsecured creditors the full amount of the "disposable income pot" ("DIP") calculated under § 1325 in less than five years. The issue here is whether debtors are permitted to propose a plan which does this.

Phrased succinctly, the question is whether the ACP is a multiplier rather than a time period, *i.e.,* whether it is a "monetary" or a "temporal" requirement.[26] The Honorable Jerry W. Venters of this District recently addressed this issue in *In re Schanuth,* concluding that it is a temporal requirement.[27] I agree.

First, as discussed above, for purposes of § 1325(b) plan confirmation, the Form B22C disposable income calculation is merely a starting point, not a determinative number. And, if a court is not required to confirm a plan simply because the debtors propose a plan payment in the Form B22C amount, it follows that a court is not required to confirm a plan because it proposes to pay a total sum equal to the Form B22C amount multiplied by the applicable number of months.

---

[24] 11 U.S.C. § 1325(b)(4)(A)(ii).

[25] *See* Part II, Line 17, of the McGuires' Form B22C.

[26] *In re Schanuth*, No. 06-40056, slip op. at 5-6 (Bankr. W.D. Mo. May 26, 2006).

[27] *Id.*

Second, as Judge Venters pointed out, a monetary interpretation of ACP renders § 1325(b)(4)(B) meaningless. That section provides that an ACP "may be less than 3 or 5 years, whichever is applicable under subparagraph (A), *but only if the plan provides for payment in full of all allowed unsecured claims over a shorter period.*"[28] Under this plain language, a period shorter than the ACP is allowed only if unsecured creditors are being paid in full. In the McGuires' case, they are not being paid in full, so their Plan must run sixty months.

Finally, as Judge Venters noted, the BAPCPA amendments do not change pre-BAPCPA practice on this issue. Before the BAPCPA amendments, § 1325(b)(1)(B) required that a plan provide that "all of the debtor's projected disposable income to be received in the *three-year period* beginning on the date that the first payment is due" be paid into the plan. Debtors were not permitted to leave their Chapter 13 plans early, absent extraordinary circumstances,[29] or if creditors were being paid in full. As relevant here, the amendments only changed "the three year period" to "applicable commitment period" and there is no indication Congress intended to change pre-BAPCPA practice.

## CONCLUSION

For the foregoing reasons, the Trustee's Motion to Deny Confirmation will be sustained. An Order in accordance with this Memorandum Opinion will be entered this date.

---

[28] 11 U.S.C. § 1325(b)(4)(B (emphasis added).

[29] *See* 11 U.S.C. § 1328(b).

                                                <u>/s/ Arthur B. Federman</u>
                                                    Bankruptcy Judge

Date: June 1, 2006